816 N.E.2d 894 (2004)
C.L.Y., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 71A03-0311-JV-460.
Court of Appeals of Indiana.
October 27, 2004.
*896 Sean P. Hilgendorf, South Bend, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Daniel Jason Kopp, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
VAIDIK, Judge.

Case Summary
C.L.Y. appeals his adjudication as a delinquent child for committing acts that would constitute Child Molesting as a Class C felony and Attempted Child Molesting as a Class B felony if committed by an adult.[1] We find that it was not an abuse of discretion for the trial court to order C.L.Y. to remain in detention pending his fact-finding hearing and to deny C.L.Y.'s motion for continuance. We affirm because even assuming that the photographic array from which the victim made an out-of-court identification is impermissibly suggestive, the evidence is nonetheless sufficient to sustain C.L.Y.'s adjudication as a delinquent child.

Facts and Procedural History
According to the facts most favorable to the judgment, the following events occurred at approximately 7:00 p.m. on April 22, 2003. As eight-year-old A.B. was riding her bicycle in the alley behind the house where she lives with her grandmother, two white teenage brothers who live in a green houseone of whom was later identified as C.L.Y.yanked A.B. off her bicycle and pulled her into an inoperable van parked in their father's backyard, adjacent to the alley. Then, one at a time, the brotherswhom A.B. referred to in her testimony as "Michael" and "Plain old boy"sexually assaulted her. Specifically, "Plain old boy," the older brother, stood outside the van while "Michael" removed A.B.'s clothing, touched her vagina with his hand and penis, and "humped" her. *897 Tr. p. 231. According to A.B.'s testimony, "Michael" ejaculated on "the couch" and her abdomen. Id. at 232. Then "Plain old boy" touched her vagina with his penis but did not ejaculate. A.B. testified further that after she said no "really loud," "Plain old boy" stopped what he was doing and threw her out of the van's broken window. Id. at 245. A.B. then returned home.
The next morning at school, A.B.'s teacher Collette Couture observed that A.B. was behaving strangely: in addition to asking to use the restroom four times in less than three hours, A.B. was "holding her vaginal area" and "walk[ing] very gingerly." Id. at 87, 88. After lunch, A.B. told Couture what had happened, and Couture took A.B. to the principal's office. The principal contacted A.B.'s grandmother, and after social worker Maryann West drove A.B. home, A.B.'s grandmother and West took A.B. to the emergency room. Once there, medical personnel performed a full examination of A.B.  paying particular attention to her genitalia and anal area and took swabs to place in a sexual assault kit. Emergency physician Phillip R. Kavanagh, who performed the examination of A.B., testified at trial that he did not observe any "signs of trauma" on her body, such as bruises, scratches, or bleeding. Id. at 583.
On April 25, 2003, A.B. was taken to the CASIE Center, where she participated in a videotaped interview conducted by social worker Angie Scott. During this interview, A.B. described the incident and revealed that her assailants were two white teenage brothers.
Shortly thereafter, Detective Cynthia Eastman of the South Bend Police Department was assigned to the case and, after viewing the videotaped interview with A.B., began developing suspects. After learning that several white teenage brothers  T.Y., J.Y., and C.L.Y.  live in the house behind which the van was parked, Detective Eastman obtained photographs of the boys from their school identification cards. All three of these photos were included in a photo array along with three other random photographs, taken from school yearbooks, depicting white males of the same age range and general appearance as C.L.Y. and his brothers. However, the young men in the yearbook photographs are wearing collared shirts and ties and two of the three are sporting blazers and smiling broadly; in contrast, the student identification card photographs are grainy and somewhat blurry and the brothers, including C.L.Y., are faced forward, expressionless, wearing white t-shirts. On May 8, 2004, when Detective Eastman presented this photo array to A.B. at her school, A.B. studied the photos intently, "visibly started shaking," and then  in "probably less than a minute"  pointed to photos Number 2 (J.Y.) and Number 5 (C.L.Y.). Id. at 325.
On May 12, Sergeant Michael Suth of the South Bend Police Department processed the van for evidence, using a UV light to examine the exterior and interior of the van. Sergeant Suth then used an acid phosphate test on the areas inside the van that fluoresced under the UV light; in two areas inside the van, the tests were positive for the presence of semen.
On May 19, the State filed a two-count Petition Alleging Delinquency charging C.L.Y. with Child Molesting as a Class B felony if committed by an adult and Child Molesting as a Class C felony if committed by an adult.[2] At an initial hearing held on *898 May 30, C.L.Y. entered a denial, and the trial court determined that C.L.Y. should be detained pending trial.[3] Trial was set for June 12.
On June 10, the trial court held a hearing at which C.L.Y.'s counsel complained that he had not yet received from the State the potentially-exculpatory test results of the physical evidence, including the sexual assault kit, a blood sample taken from C.L.Y., and the upholstery from the van's interior believed to contain semen stains. The State responded that the samples had been sent to the Indiana State Police Laboratory for DNA testing but it would be virtually impossible to get the results back before the trial date of June 12. The State also asserted that it was ready to proceed to trial without the results from the physical evidence. The trial court decided to "view this as a failure in discovery, not as a request for continuance...." Appellant's App. p. 30.
On June 12, 2003, the trial court held a detention hearing at which the parties discussed the implications of the discovery problem with regard to Indiana Code § 31-37-11-2, which requires the trial court to hold a fact-finding hearing within twenty days of the filing of a petition. Specifically, C.L.Y. asserted that although he could not proceed to trial without the test results of the physical evidence the State had not yet provided through discovery, it would be "fundamentally unfair" for him to waive his right to a speedy trial because of an inability to obtain evidence the State had failed to provide. Id. at 28. The State responded that the evidence was at the Indiana State Police Laboratory and would not be ready for approximately six weeks. The State also filed a Motion to Reconsider asserting that (1) C.L.Y. had not adequately established that the physical evidence would prove to be exculpatory, and (2) the State had provided C.L.Y. with all of the evidence the State intended to present at trial. The trial court determined that the delay caused by C.L.Y.'s discovery request  the previously-dubbed "failure in discovery"  was attributable to C.L.Y. Id. at 44-46.
The fact-finding hearing commenced on August 12. At the outset, C.L.Y. orally requested a motion for continuance in order to submit the physical evidence to independent analysis at public expense. The DNA results had been released on July 28, but C.L.Y.'s counsel had left for vacation shortly thereafter, and C.L.Y. had decided the night before trial to pursue further analysis of the physical evidence. The State argued that to grant a continuance would be a "huge imposition" upon eight-year-old A.B., who was present to testify as a witness. Id. at 65. The trial court denied C.L.Y.'s request for continuance on the basis of Indiana Code § 35-36-7-3, which requires the court to consider whether a postponement will have an adverse impact on a child less than ten years old who is either the victim or a witness in the trial. However, the trial court also told C.L.Y.'s counsel to submit a memorandum justifying the need for both a continuance and the appointment of experts to perform further testing on the physical evidence at public expense; if persuaded *899 of the necessity for further testing, the trial court would delay the proceedings at that point. Counsel for C.L.Y. did not submit the requested memorandum.
Although A.B.'s trial testimony was somewhat unclear, the following information was elicited.[4] A.B. testified that the boys who pulled her into the van live "in the green house," and when she was presented with a photograph of C.L.Y.'s house, she confirmed that that is "the boys['] house." Tr. p. 223. A.B. also described the events that occurred in the van, including the fact that "white stuff" came out of "Michael's" penis and got on her abdomen and "the couch" in the van. Id. at 232-33. And although A.B. initially testified that C.L.Y. was in the courtroom and that he was wearing a gray and white shirt and sitting next to a boy, she later testified that he was not in the courtroom.[5]Id. at 259.
Testimony was also elicited at the trial from Sharon Pollock, a forensic DNA analyst at the Indiana State Police Laboratory. Pollock testified that the upholstery samples taken from the van, which contained "whitish stains" that fluoresced with the UV light, tested positive according to the acid phosphate test but negative according to the P-30 test.[6]Id. at 476. Pollock explained that there are a number of possible explanations for this result, including that the particular area tested was not a very concentrated sample or that the person does not produce sperm cells or has a very low sperm count. However, Pollock also testified that according to the DNA profile obtained from the pieces of upholstery, C.L.Y. is the source of the DNA to a reasonable degree of scientific certainty.
On September 11, the trial court adjudicated C.L.Y. to be a delinquent child for committing acts that, if committed by an adult, would constitute Child Molesting as a Class C felony and Attempted Child Molesting  a lesser-included offense of Child Molesting  as a Class B felony.
C.L.Y. now appeals.

Discussion and Decision
C.L.Y. raises four issues on appeal. First, he asserts that the trial court erred in ordering C.L.Y. to remain detained pending his fact-finding hearing, particularly by ordering continued detention beyond the statutory twenty-day period. Second, C.L.Y. contends that the trial court erred in denying his oral motion for continuance at the August 12 hearing. Finally, C.L.Y. argues that there is insufficient evidence to prove beyond a reasonable doubt the elements of Identity and Attempt.[7] We consider each issue in turn.

*900 I. C.L.Y.'s Detention & the Twenty Day Detention Limit
C.L.Y. argues first that the trial court erred in (1) ordering him to be detained pending his fact-finding hearing and (2) continuing his detention even though the State's failure to provide evidence precluded a fact-finding hearing within twenty days as required by statute. We note at the outset that issues pertaining to C.L.Y.'s detention are moot because even if C.L.Y. prevails on these issues, this Court is not in a position to render effective relief to him. See C.T.S. v. State, 781 N.E.2d 1193, 1198 (Ind.Ct.App.2003), trans. denied. However, Indiana courts "have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of great public interest." See id. (quoting R.A. v. State, 770 N.E.2d 376, 378 (Ind.Ct.App.2002)). Issues that are likely to recur  such as the observation of the twenty-day detention limit of Indiana Code § 31-37-11-2 when DNA testing is involved  generally fall within the public interest exception; therefore, we will address this issue on its merits. Id.
We find, first, that the trial court did not abuse its discretion in ordering C.L.Y. to be detained pending his hearing. The statute governing this question is Indiana Code § 31-37-6-6:
(a) The juvenile court shall release the child on the child's own recognizance or to the child's parent, guardian, or custodian.... However, the court may order the child detained if the court finds probable cause to believe the child is a delinquent child and that:
* * * *
(2) detention is essential to protect the child or the community[.]
Ind.Code § 31-37-6-6. At the hearing on May 30, the Probation Department recommended continued detention of C.L.Y. for the protection of the community. The trial court agreed  "given the nature of the charges, the age of the victim[,]" Appellant's App. p. 94  and ordered C.L.Y. detained.
C.L.Y. invites comparison to C.T.S. v. State, in which a different panel of this Court found that the trial court abused its discretion when it detained a juvenile for over four months pending his trial.[8]C.T.S., 781 N.E.2d at 1200. In C.T.S., there was "ample evidence in the record demonstrating that [the juvenile]'s parents were willing to go to great lengths so that C.T.S. could be released to their care while the proceedings were pending." Id. We recognize that C.L.Y.'s mother was willing to move back home to provide supervision for C.L.Y. and that his aunt and uncle also offered to help. But the crucial distinction between C.T.S. and the case before us is that in C.T.S., the juvenile was charged with two offenses that would be Class A misdemeanors if committed by an adult. See id. Hence, C.T.S. was detained for over four months on two comparatively minor charges; C.L.Y., in contrast, was detained for fifty-nine days excluding weekends and holidays after being charged with an extremely serious offense. Given the circumstances surrounding the offense, we cannot say the trial court abused its discretion in finding that C.L.Y.'s detention was essential to protect the community.
*901 Next, C.L.Y. asserts that the trial court erred by failing to comply with the statutory mandate to release C.L.Y. from detention since a fact-finding hearing was not commenced within twenty days from May 19, the date the Petition Alleging Delinquency was filed. In support of this argument, C.L.Y. relies on several Juvenile Code statutes, including Indiana Code § 31-37-11-2, which provides in relevant part:
(a) If:
(1) a child is in detention; and
(2) a petition has been filed;
a fact-finding hearing or a waiver hearing must be commenced not later than twenty (20) days, excluding Saturdays, Sundays, and legal holidays, after the petition is filed.
And Indiana Code § 31-37-11-6(1) provides that the twenty-day detention limit set forth in section 2 of this chapter shall be computed excluding delays resulting from "continuances granted on the child's motion." Indiana Code § 31-37-11-10 provides in relevant part that "if [] a continuance is granted on a child's motion[,] a time period is extended by the amount of the resulting delay." Finally, Indiana Code § 31-37-11-7 states that if a child is in detention and the twenty-day time limit imposed by Indiana Code § 31-37-11-2 is not followed, "the child shall be released on the child's own recognizance or to the child's parents...."
At the initial hearing on June 10, C.L.Y. informed the trial court that there were several pieces of physical evidence being tested that the State had not yet provided to C.L.Y. through discovery. C.L.Y. argued that although he could not proceed to trial without the evidence or the test results, he was not moving for a continuance; instead, he was asking the trial court to recognize that it would be "fundamentally unfair" for C.L.Y. to waive his right to a speedy trial just because the State had failed to provide potentially exculpatory evidence. Appellant's App. p. 28. Essentially, C.L.Y. urged the trial court to continue the trial "because discovery ha[d] not yet been complied with[,]" but to find the delay not chargeable to C.L.Y. Id. at 24-25.
The State responded that the evidence was at the Indiana State Police Laboratory being processed, and the State had contacted the lab and learned that "[i]t would be virtually impossible for [the analyst] to have the results back [in time for a June 12 trial].... [The analyst said s]he could get to it in the next two weeks and it would be ready for the Court probably two weeks after that, so a month and a half almost." Id. at 27. On June 12, the State informed the trial court that it was ready to proceed to trial without the evidence and that it had provided C.L.Y. with all of the evidence the State intended to use at trial. Further, the State argued that C.L.Y. had not shown that the evidence would be exculpatory. The trial court determined that C.L.Y.'s evidence request would be chargeable to C.L.Y. and that he would remain in detention until trial.
The question presented  whether the delay caused by C.L.Y.'s discovery request should be chargeable to C.L.Y. for purposes of the twenty-day detention limit of the Juvenile Code  has been considered by other panels of this Court in the non-juvenile context of Criminal Rule 4.[9]See, *902 e.g., Paul v. State, 799 N.E.2d 1194, 1199 (Ind.Ct.App.2003) (finding that denial of the defendant's motion for discharge pursuant to Criminal Rule 4(B)(1) was not erroneous because the State "was not derelict in its duties and provided discovery expeditiously under the circumstances."), reh'g denied; Hillenburg v. State, 777 N.E.2d 99, 104-105 (Ind.Ct.App.2002) (finding that the delays caused by the defendant's multiple evidence-related requests for continuances were chargeable to the defendant because "it is not the motive behind defendant's actions, but the effect of his actions, that determines whether the delay is attributable to him."), trans. denied; Marshall v. State, 759 N.E.2d 665, 670 (Ind.Ct.App.2001) (holding that the defendant's evidence-related motions for continuance were not chargeable to him because a defendant should not be forced to choose between waiving his rights to a speedy trial or proceeding to trial unprepared); Crosby v. State, 597 N.E.2d 984, 988-89 (Ind.Ct.App.1992) (finding that because the delay in the defendant's trial was due to the State's negligence in complying with discovery and late filing and amendment of charges, the trial court erred in failing to discharge the defendant pursuant to Criminal Rule 4(B)(1)); Biggs v. State, 546 N.E.2d 1271, 1274-75 (Ind.Ct.App. 1989) (finding that the trial court erred in denying the defendant's motion for discharge pursuant to Criminal Rule 4(C) because delays were caused by the State's failure to comply with discovery requests). As a general rule, the determination of whether a delay caused by a defendant's evidence request is chargeable to the defendant for speedy trial purposes turns on whether the State was negligent or less than diligent in complying with the defendant's request. See Paul, 799 N.E.2d at 1198 ("Marshall, Crosby, and Biggs all involved situations where the State was found to have either violated discovery orders or been negligent in providing discovery.").
Here, there is no indication that the State was negligent in complying with C.L.Y.'s discovery request. On the contrary, at the time of C.L.Y.'s request, the State had provided C.L.Y. with all of the evidence it intended to use at trial and was powerless to accelerate the testing of the physical evidence C.L.Y. was requesting.[10] We must conclude that when a delay is caused by a detained juvenile's discovery *903 request for evidence that the State  despite due diligence  is powerless to provide, that delay must be chargeable to the juvenile for purposes of the twenty-day rule of Indiana Code § 31-37-11-2. Such is the case here. Hence, we cannot say the trial court erred in finding that C.L.Y.'s discovery request was chargeable to C.L.Y. and thus ordering C.L.Y. to remain detained in excess of twenty days without a fact-finding hearing.

II. C.L.Y.'s Motion for Continuance
Next, C.L.Y. argues that the trial court erred in denying his oral motion for continuance at the August 12 hearing. Specifically, C.L.Y. requested a continuance so experts appointed at public expense could conduct further testing on the physical evidence. C.L.Y. did not allege that the Indiana State Police Laboratory had mishandled the evidence or committed error. Instead, C.L.Y. asserted, "[T]here was a presumptive test that tested positive. But then their further analysis didn't follow up on that. There's still material to be tested." Appellant's App. p. 69. The trial court denied the motion but requested that C.L.Y. submit a memorandum justifying the continuance, stating "I haven't been provided with a substantial reason to grant [the continuance].... You may be able to convince me that it's necessary to appoint experts and go ahead and allow the testing be done as you seek, but we will proceed with the trial...." Id. at 73. C.L.Y. did not submit the requested memorandum.
The statutory procedure for moving for a continuance due to the absence of evidence is set forth in Indiana Code § 35-36-7-1, which provides:
(a) A motion by a defendant to postpone a trial because of the absence of evidence may be made only on affidavit showing:
(1) that the evidence is material;
(2) that due diligence has been used to obtain the evidence; and
(3) the location of the evidence.
* * * *
(d) A defendant must file an affidavit for a continuance not later than five (5) days before the date set for trial. If a defendant fails to file an affidavit by this time, then he must establish, to the satisfaction of the court, that he is not at fault for failing to file the affidavit at an earlier date.
The standard of review for a trial court's ruling on a continuance not required by statute is abuse of discretion. Flake v. State, 767 N.E.2d 1004, 1008 (Ind.Ct.App. 2002). An abuse of discretion occurs when the ruling is against the logic and effect of facts and circumstances before the court or where the record demonstrates prejudice from denial of the continuance. Id. We will not disturb the trial court's decision absent a clear demonstration that the trial court abused its discretion. Id.
Here, C.L.Y.'s counsel requested a continuance because although he had received the State's discovery with regard to DNA testing on July 28, 2003  fifteen days before the trial date  he had been on vacation from July 31 to August 11. Thus, he had only four days to review the test results; moreover, C.L.Y. decided the night before trial that he would like to subject the physical evidence to further testing. C.L.Y. concedes that he did not comply with the statutory requirement of filing an affidavit not later than five days before the trial date. Instead, he orally moved for a continuance on the day of trial and then failed to follow up with a supporting memorandum as requested by the trial court. Thus, we will give the trial court's decision substantial deference.
*904 The trial court based its denial of C.L.Y.'s motion on Indiana Code § 35-36-7-3, which states:
(a) This section applies to criminal actions for felonies under I.C. 35-42... and for attempts of those felonies....
(b) If a motion is made to postpone a trial or other court proceeding that involves an offense listed in subsection (a), the court shall consider whether a postponement will have an adverse impact upon a child who is less than ten (10) years of age and who:
(1) is the alleged victim of an offense listed in subsection (a); or
(2) will be a witness in the trial.
Here, eight-year-old A.B. was both the victim and a witness in the trial. Given the trauma A.B. had already suffered, it was reasonable for the court to find that postponement would have an adverse impact upon her. Indeed, we find the trial court's decisionto proceed with the trial, with the proviso that the trial could be continued if the court was persuaded there was a need to do soto be a remarkably fair solution. We cannot say the trial court abused its discretion in determining that further delay would have an adverse impact upon her.

III. Sufficiency of Evidence
Finally, C.L.Y. argues that the evidence is insufficient to prove beyond a reasonable doubt that: (1) C.L.Y. is the individual who committed the offenses, and (2) C.L.Y. had the requisite culpability for Attempted Child Molesting as a Class B felony. When we review sufficiency of the evidence claims with respect to juvenile adjudications, we neither reweigh the evidence nor judge the credibility of the witnesses. B.K.C. v. State, 781 N.E.2d 1157, 1163 (Ind.Ct.App.2003). Rather, we consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. Id.
First, the evidence is sufficient to prove beyond a reasonable doubt that C.L.Y. is one of the individuals who committed the offenses. In her interview at the CASIE Center and throughout her trial testimony, A.B. stated that the offense was committed by two white teenage brothers. She stated further that the boys who committed the offense lived in a green house; when presented with a photograph of the house where C.L.Y. and his brothers livebehind which the van was parked she confirmed that this was the house. She testified that the boy she called "Michael" ejaculated "on the couch" inside the van; the DNA profile obtained from a whitish stain on the van's upholstery matches that of C.L.Y. to a reasonable degree of scientific certainty. It is not the province of this Court to reweigh the evidence. We find the evidence is sufficient to prove beyond a reasonable doubt that C.L.Y. is one of the individuals who committed the offense.
Next we consider C.L.Y.'s argument that the State's evidence is insufficient to prove Attempted Child Molesting as a Class B felony. The State charged C.L.Y. with two counts of Child Molesting: one as a Class B felony and one as a Class C felony, both pursuant to Indiana Code § 35-42-4-3. This statute provides:
(a) A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony.

*905 * * * *
(b) A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony.
Ind.Code § 35-42-4-3. The trial court found that the second chargeChild Molesting as a Class C felonywas true; as to the first charge, the trial court found that the evidence supported only Attempted Child Molesting, a Class B felony. "I don't find that penetration occurred. I don't think there was testimony to justify that and I will find an attempt." Tr. p. 772. In order to adjudicate C.L.Y. of Attempted Child Molesting as a Class B felony, the State was required to prove beyond a reasonable doubt that C.L.Y. was acting with the culpability required for commission of Child Molesting as a Class B felony and that he engaged in conduct that constitutes a substantial step toward commission of the crime.[11] Our supreme court has found that the culpability requirement of the child molesting statute is "knowingly or intentionally." See Louallen v. State, 778 N.E.2d 794, 798 (Ind.2002) (concluding that it was not error to instruct the jury that defendant could be convicted pursuant to Indiana Code § 35-42-4-3(b) for "knowingly or intentionally" molesting a child); Cardwell v. State, 516 N.E.2d 1083, 1086 (Ind.Ct.App.1987) ("Regardless of the fact that there is no specific mention of any criminal intent or mens rea in the relevant portion of the child molesting statute, mens rea is an element of the crime of child molesting."), reh'g denied, trans. denied. A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. See Ind.Code § 35-41-2-2(b). A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. See Ind.Code § 35-41-2-2(a). The intent element of child molesting may be established by circumstantial evidence and inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points. Cruz Angeles v. State, 751 N.E.2d 790, 797 (Ind.Ct.App.2001), trans. denied.
C.L.Y. contends that there is no evidence to prove beyond a reasonable doubt that he knowingly or intentionally attempted to perform sexual intercourse or deviate sexual conduct and that he engaged in conduct that constitutes a substantial step toward commission of the crime. We disagree. The evidence shows that C.L.Y. and another boy, alleged to be one of his older brothers, pulled A.B. into a van, whereupon C.L.Y.whom A.B. refers to as "Michael"removed her clothes and "humped her" by rubbing his penis on her vagina until he ejaculated. Although penetration may not have occurred, the circumstantial evidence and C.L.Y.'s conduct points to the inference that he was attempting to penetrate A.B. Moreover, by removing A.B.'s clothes and "humping" her, C.L.Y. clearly committed a substantial step toward performing sexual intercourse with A.B. Thus, we find that the evidence is sufficient to prove beyond a reasonable doubt both the culpability and substantial *906 step requirements of Attempted Child Molesting as a Class B felony.
Affirmed.
CRONE, J., concurs.
RILEY, J., concurs in part and dissents in part with separate opinion.
RILEY, Judge, concurring in part and dissenting in part.
I concur in part and dissent in part. I concur with the majority opinion as to Issue I and Issue II. I respectfully dissent to Issue III.
In the companion opinion of J.Y. v. State, I agree with the majority opinion that reached the conclusion there was insufficient evidence of identity that J.Y. sexually assaulted A.B. I reach the same conclusion as to C.L.Y. There is no corroborating evidence of probative value regarding the identity of C.L.Y.
It is a fact that the DNA profile of C.L.Y., to a reasonable degree of certainty, showed that the boy she called "Michael" ejaculated "on the couch" inside the van. This evidence does not nor should it convict anyone beyond a reasonable doubt of sexual assault.
It is my opinion that the photo array was tainted and thus there was insufficient evidence as to identity. The only other evidence presented was physical evidence that C.L.Y.'s DNA profile matched a whitish stain on the van's upholstery to a reasonable degree of scientific certainty. I would reverse the juvenile court's adjudication of C.L.Y. as a delinquent child.
NOTES
[1] Ind.Code §§ 35-42-4-3(a), 35-41-5-1.
[2] Indiana Code § 35-42-4-3 provides:

(a) A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony.
* * * *
(b) A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony.
[3] Pursuant to Indiana Code § 31-37-6-6, "the court may order the child detained if the court finds probable cause to believe the child is a delinquent child and that:

* * * *
(2) detention is essential to protect the child or the community[.]"
[4] A.B.'s teacher Collette Couture testified that A.B. attends special education classes because she needs help with "learning strategies" and has had problems with hyperactivity. Tr. p. 82.
[5] The record does not reflect whether C.L.Y. was, in fact, wearing a gray and white shirt.
[6] Pollock testified that acid phosphatase is an enzyme that is found in very high levels in seminal material; an "acid phosphatase test" is a presumptive test, used primarily for screening purposes because it is sensitive but not specific. P-30 is a protein found in very high levels in seminal material; a "P-30 test" is an insensitive  which means it cannot detect very dilute samples  confirmatory test that can be used for seminal material.
[7] C.L.Y. also asserts that because the photo array is impermissibly suggestive, the trial court erred in allowing the photo array and testimony pertaining to it into evidence. But because we find the evidence is sufficient to sustain C.L.Y.'s adjudication even assuming the photo array is impermissibly suggestive  as was found in the companion decision, J.Y. v. State, No. 71A03-0403-JV-103, 816 N.E.2d 909, 2004 WL 2397385 (Ind.Ct.App. Oct. 27, 2004), issued today by another panel of this Court  we need not reach the merits of this claim.
[8] When C.L.Y. cites C.T.S. elsewhere in his brief, he writes, "the Court in C.T.S. held that the juvenile was detained in violation of Indiana Code [§] XX-XX-X-X because ample evidence appeared in the record to demonstrate that the juvenile was not a flight risk, was not a danger to himself, and was not a danger to the community." Appellant's Br. p. 8.
[9] Criminal Rule 4 provides:

(A) No defendant shall be detained in jail on a charge, without a trial, for a period in aggregate embracing more than six (6) months from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge (whichever is later); except where a continuance was had on his motion, or the delay was caused by his act....
(B)(1) If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act....
* * * *
(D) If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence may be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial within such additional ninety (90) days, he shall then be discharged.
Of particular significance is (1) the difference in time requirements between the "speedy trial provision" of the Juvenile Code-twenty days  and Criminal Rule 4, which provides that the defendant who moves for a speedy trial must be tried within seventy days, and no defendant shall remain in jail without a trial for an aggregate of six months, and (2) the unavailable evidence exception of 4(D), which has no counterpart in the Juvenile Code.
[10] We recognize the apparent impossibility of satisfying the Juvenile Code's twenty-day detention limit when DNA testing is involved but leave such matters up to the legislature to remedy.
[11] Indiana Code § 35-41-5-1 provides in relevant part: "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted."