Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2013, 9:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DANIELLE L. GREGORY**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| EDWARD T. BRONAUGH, )<br>)<br>Appellant-Defendant, )<br>)<br>vs. )<br>)<br>STATE OF INDIANA, )<br>)<br>Appellee-Plaintiff. ) | No. 49A02-1210-CR-832 |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Reuben B. Hill, Judge
Cause No. 49F18-1109-FD-62862

**June 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Edward Bronaugh ("Bronaugh") was convicted after a bench trial of Battery, as a Class D felony;[1] Residential Entry, as a Class D felony;[2] Resisting Law Enforcement, as a Class A misdemeanor;[3] Disorderly Conduct, as a Class B misdemeanor;[4] Public Intoxication, as a Class B misdemeanor;[5] and Public Nudity, as a Class C misdemeanor.[6] He now appeals, raising for our review the single issue of whether his convictions were supported by sufficient evidence because he was involuntarily intoxicated.

We affirm.

## Facts and Procedural History

On the morning of September 2, 2011, Bronaugh smoked adulterated marijuana. Later that day, he entered the Bethesda Temple Apostolic Church. There, he conversed with Barry Fields ("Fields"), who noticed that Bronaugh's thoughts were "all over the place." (Tr. at 10, 45.) Bronaugh hugged Fields and kissed his neck, making Fields uneasy. Fields told Bronaugh he should leave, at which point Bronaugh turned and began walking in the direction of the daycare wing of the church. Another man directed Bronaugh outside, where

---

[1] Ind. Code § 35-42-2-1.

[2] I.C. § 35-43-2-1.5.

[3] I.C. § 35-44-3-3 (2011). The relevant statutory provision was recodified as Indiana Code section 35-44.1-3-1, effective July 1, 2012. We refer to the statutory provision in effect at the time of the alleged offense.

[4] I.C. § 35-45-1-3.

[5] I.C. § 7.1-5-1-3 (2011). The relevant statutory provision was modified, effective July 1, 2012. We refer to the version of the statute in effect at the time of the alleged offense.

[6] I.C. § 35-45-4-1.5.

he began running around the church parking lot.

Bronaugh then ran across the street and undressed on a street corner before returning to the church parking lot where he again began running around. He then ran to a house across the street, where he broke through a screened porch door at the back of the house, and then broke a glass window pane of the house's back door. Upon hearing the glass break, Bianca Harris ("Harris"), who was inside the house, grabbed her infant son and ran out the side door. In her driveway, Harris met Indianapolis Metropolitan Police Department Officer Charles Rhodes ("Officer Rhodes"), who was responding to reports of a disturbance.

Eventually, Bronaugh exited the house through the front door and stepped onto Harris's lawn, at which point Officer Rhodes ordered him to get down on the ground. Bronaugh initially complied, but got up again. Officer Rhodes approached Bronaugh and ordered him to put his hands behind his back. Bronaugh yelled back at Officer Rhodes, and refused to comply with the officer's orders. Officer Rhodes warned Bronaugh that he would be tased if he refused to comply. Bronaugh again refused to comply with the officer's orders, and started to get to his feet, at which point Officer Rhodes tased him. Bronaugh stood up with the taser prongs still in his side, and Officer Rhodes tased him again.

After a third tase, Bronaugh got up on one knee, made a fist with his right hand, and charged at Officer Rhodes. Officer Rhodes was unable to distance himself from Bronaugh, who swung at Officer Rhodes's face, but missed. Bronaugh swung again, landing a painful blow to Officer Rhodes's bicep. Officer Rhodes handcuffed Bronaugh after a long scuffle.

While handcuffed, Bronaugh continued to struggle, and ate some of the grass of the

lawn down to the dirt, while babbling nonsensically.  Indianapolis Metropolitan Police Officer Eric Hotseller ("Officer Hotseller"), who had responded to Officer Rhodes's call for assistance, asked what Bronaugh was on, and Bronaugh responded that he was "on wet and crack cocaine." (Tr. at 33, 38.)  Officer Rhodes testified at trial that "wet" is adulterated marijuana, and that "[t]hey have used embalming fluid in the past where they will dip it in embalming fluid to get a high and it . . . [allegedly gives] individuals . . . superhuman strength which can cause them to fight through . . . [and] they don't feel pain[.]" (Tr. at 33.)

On September 7, 2011, the State charged Bronaugh with Battery, as a Class D felony; Residential Entry, as a Class D felony; Resisting Law Enforcement, as a Class A misdemeanor; Disorderly Conduct, as a Class B misdemeanor; Public Intoxication, as a Class B misdemeanor; and Public Nudity, as a Class C misdemeanor.  After a bench trial, the trial court found him guilty as charged.

On September 24, 2011, the trial court entered judgments of conviction, and sentenced Bronaugh to 730 days imprisonment, with 185 days suspended to probation, and sixty-seven days of credit time.

Bronaugh now appeals.

**Discussion and Decision**

Bronaugh contends that the evidence was insufficient to sustain his convictions.  More specifically, he argues that he "was not aware the marijuana he [had] smoked was laced with embalming fluid and [that it] would cause him to 'go crazy[.]'" (Appellant's Br. at 5.)  Thus, he asserts that he was so involuntarily intoxicated as to be unable to form the requisite intent

4

for the offenses of which he was convicted.

When reviewing a defendant's conviction for sufficiency of the evidence after a bench trial:

> [t]his court will not reweigh the evidence or assess the credibility of witnesses. Cox v. State, 774 N.E.2d 1025, 1028 (Ind. Ct. App. 2002). Only the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom will be considered. Id. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed. Id. at 1028-29.

Sargent v. State, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007).

Criminal intent can be established by circumstantial evidence and inferred from the defendant's conduct and the natural and usual sequence to which such conduct reasonably points. Boling v. State, 982 N.E.2d 1055, 1058 (Ind. Ct. App. 2013) (citing C.L.Y. v. State, 816 N.E.2d 894, 905 (Ind. Ct. App. 2004), trans. denied). To sustain convictions of Battery, as a Class D felony, Residential Entry, as a Class D felony, Resisting Law Enforcement, as a Class A misdemeanor, and Public Nudity, as a Class C misdemeanor, the requisite intent is "knowingly or intentionally[.]" I.C. § 35-42-2-1; I.C. § 35-43-2-1.5; I.C. 35-44-3-3 (2011); I.C. § 35-45-4-1.5. The intent required to sustain a conviction of Disorderly Conduct, as a Class B misdemeanor, is "recklessly, knowingly, or intentionally[.]" I.C. § 35-45-1-3. There is no intent element associated with Public Intoxication, as a Class B misdemeanor. I.C. § 7.1-5-1-3 (2011); see also Street v. State, 911 N.E.2d 654, 657 (Ind. Ct. App. 2009), trans. denied.

Voluntary intoxication may not be used as a defense to dispute the existence of a

5

mental state that is an element of a crime. I.C. § 35-41-2-5; see also Sanchez v. State, 749 N.E.2d 509, 511 (Ind. 2001). However, "[i]nvoluntary intoxication is a defense to the crime charged if, as a result of the intoxication, the defendant was unable to appreciate the wrongfulness of the conduct at the time of the offense." Ellis v. State, 736 N.E.2d 731, 734 (Ind. 2000). "An involuntary intoxication defense disputes the existence of intent." Id. "If successful, this defense would negate culpability for any offenses [the defendant] committed." Id.

The law governing the defense of involuntary intoxication provides:

It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body:

(1) without his consent; or
(2) when he did not know that the substance might cause intoxication.

I.C. § 35-41-3-5. The defendant has the burden of proving the defense. Melendez v. State, 511 N.E.2d 454, 457-58 (Ind. 1987).

Here, Bronaugh admitted at trial that he voluntarily smoked marijuana on the morning of September 2, 2011, and that he engaged in each of the acts alleged by the State. (Tr. at 43-49.) Officer Rhodes testified that Bronaugh struck him, and that Bronaugh struggled while he attempted to place him under arrest. Officers Rhodes and Hotseller testified that Bronaugh stated that he had consumed "wet and crack cocaine[,]" which both officers described at trial as marijuana adulterated with formaldehyde, adding a secondary effect to the marijuana.

By concluding that Bronaugh committed all six offenses as charged, the trial court

implicitly found that he satisfied the intent requirement for each offense. (App. at 18-21; Tr. at 54-55.)  The trial court was entitled to so find based on the evidence presented at trial, and the reasonable inferences that can be drawn therefrom.  To the extent Bronaugh argues that he was unaware that the marijuana was adulterated, that argument is a request that we reassess witness credibility and reweigh evidence, which we cannot do.  See Sargent, 875 N.E.2d at 767.

## Conclusion

The State presented sufficient evidence from which the trial court could conclude that Bronaugh possessed the requisite intent for each of the charged offenses.

Affirmed.

NAJAM, J., and BARNES, J., concur.