## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 19 2018, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anna Onaitis Holden
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tommy Shealey, Jr.,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

June 19, 2018

Court of Appeals Case No.
49A02-1712-CR-2911

Appeal from the Marion Superior Court

The Honorable Peggy Ryan Hart, Magistrate

Trial Court Cause No.
49G05-1505-F1-18602

**Brown, Judge.**

[1] Tommy Shealey, Jr., appeals his conviction for attempted child molesting as a level 1 felony. Shealey raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

*Facts and Procedural History*

[2] On May 27, 2015, M.G., who was born in 2008, was sitting at a table outside her apartment with her mother, her friend, A., Brittany Perez, and others. M.G.'s mother left M.G. at the table to clean her car, which was "not that far" away.[1] Transcript Volume II at 32. At some point, Shealey arrived and sat down. Also at some point, Bill Henley arrived at the scene and observed M.G. make "kind of a grimace look on her face," which concerned him. *Id.* at 174. Henley stepped to the right and saw Shealey's hand pulling away from M.G.'s "lap, leg area." *Id.* at 175. Henley told Perez about it, and everyone scrambled away. M.G.'s older brother ran to M.G.'s mother to tell her "what the man had done" and he "had already called the police from another girl, another girl that was there." *Id.* at 33. M.G. then went to her mother and was "completely scared." *Id.*

Indianapolis Metropolitan Police Officer Chad Pryce was dispatched to a report of child molestation. Officer Pryce saw M.G. noticeably upset and crying. He also observed that Shealey appeared to be intoxicated, had slurred speech, the

---

[1] On cross-examination, Shealey's counsel asked M.G.'s mother, "Now earlier you said that from where you were washing the car to the parking lot was about from where you're sitting to the back of the courtroom, is that correct?" Transcript Volume II at 38. She answered, "Yes, from here to the last row of the chairs, it's, that's where the parking lot is, it's not too far away." *Id.*

smell of alcoholic beverage about his person, and red bloodshot glassy eyes. Indianapolis Metropolitan Police Detective Sean McCurdy smelled the odor of alcohol on Shealey's breath, noticed that he was slurring some of his words, and transported him to the Child Advocacy Center. Indianapolis Metropolitan Police Sergeant Bruce Smith interviewed Shealey.

[3] On May 29, 2015, the State charged Shealey with child molesting as a level 1 felony. The State later amended the charging information to include a habitual offender enhancement.

[4] On June 15 and August 10, 2017, the court held a bench trial. M.G.'s mother testified that there were two ladies, a man, her two sons, J.G. and A.G., and her daughter sitting at the table. She also testified that Henley was sitting with the two men and that M.G.'s friend, A., was also present.

[5] After some questioning, the court found M.G. to be a competent witness. M.G. testified that she was nine years old, that she was at the picnic table near her apartment with Bill, two ladies, her brother, A.G., and a friend, but she did not remember her friend's name. She testified that her mother was cleaning the inside of her car. When the prosecutor asked her if anybody came up to the picnic table while she was there, M.G. answered "No." *Id.* at 106. She testified that she was touched by a man she did not know and had not seen before. She described the man as an adult with brown skin darker than her skin. According to her testimony, the man was sitting beside her when she first sat at the picnic table and he smelled like beer. She stated that her brother, A.G., was standing,

the two ladies were sitting on the other side of the table, and Henley was standing by the ladies. She stated she was wearing a skirt with shorts underneath and the man first touched the upper part of her leg. The following exchange then occurred:

Q Was [his hand] down toward your knee or up farther?

A Um, up farther.

Q Okay, and did his hand stay there or did it move?

A It stayed.

Q Okay, did it ever move off of your leg?

A No.

Q No? And did his hand stay exactly where it was or did it go somewhere else?

A It stayed exactly where it was.

Q Okay, and did he touch you anywhere else?

A No.

Q Okay. [M.G.], we talked about places where it's not okay for someone to touch you, okay? Did you ever get touched near your private part?

A No – yeah.

Q Yes? Okay, you first said no but then you said yes, so I just want to make sure you understand what we're talking about. So do you need to see the picture again?

A No.

Q No? Okay. Did the man sitting next to you at the picnic table touch you on your private part?

A Yes.

Q Okay. And so you said his hand stayed still on your leg, how did that happen?

A Um, (inaudible) sitting there too and I feeled it.

Q I'm sorry, can you say that again?

A We were just sitting there and I could feel.

Q You could feel what he was doing?

A Yeah.

* * * * *

Q . . . Okay, so how did his hand touch your private part?

A Like, two fingers.

* * * * *

Q Did your, did your shorts stay on or did they come off?

A They stayed on.

Q Okay. And so how did his hand get to your private part if you were wearing shorts?

A Uh, the shorts was kind of too big.

Q And so where did his hand go?

A (Indecipherable).

Q I'm sorry, I didn't understand you.

A The top.

Q The top part?

A Uh-huh.

Q Do you mean to top up by your waist part or the top down by the bottom – or down by your leg?

A Leg.

Q I'm sorry?

A Like here.

Q I can't see where you're telling me. The part down by your leg?

A Yes.

Q Okay. So his hand went in your shorts up, up that way?

A Yeah.

*Id.* at 110-113. The prosecutor stated that M.G. kept looking over to the side of the courtroom and asked if she saw the man that touched her, and M.G. identified Shealey. She testified that his fingers went on the "[i]nside" and "stayed still." *Id.* at 114.

The court found A.G., M.G.'s brother, to be competent.[2] A.G. testified that he was sitting at the bench talking with two ladies and a man and Shealey joined them, sat down near M.G., and touched M.G. He also testified that he saw Shealey pull his hand away from under her skirt and that he called the police.

---

[2] The record indicates that A.G. informed the court of his age, but the transcript omits his actual age and merely indicates that A.G. gave his age.

He stated that M.G. was happy and hyper earlier in the day and that she was not talking or reacting to things as she had been after Shealey touched her. On cross-examination, A.G. testified that he saw Shealey's hand on his sister and under her skirt. Upon questioning by the prosecutor, A.G. testified that he noticed Shealey had a beer or alcohol in his hands and was "like limping, like a drunk guy will." *Id.* at 163. Upon questioning by the court, A.G. indicated that he was "flipping out" after he saw Shealey pull his hand away from underneath M.G.'s skirt. *Id.* at 166.

[7] Henley testified that he observed M.G. grimace and saw Shealey's hand pulling away from her "lap, leg area." *Id.* at 175. He was questioned on cross-examination as to who was sitting at the table and where they were located.

[8] Sergeant Smith testified that he interviewed Shealey and Shealey said that he did not know why he was there and he was not a pervert. Sergeant Smith stated that he asked him if he had any sort of explanation for why he would say he was not a pervert while also claiming not to know why he was there, and Shealey did not respond. On cross-examination, Sergeant Smith indicated that he injected the presence of young children in the park in his discussion with Shealey before Shealey stated he was not a pervert.

[9] After the State rested, Shealey moved for discharge "pursuant to Criminal Rule 41," and the court denied the motion.[3] *Id.* at 220. Shealey presented the

---

[3] It appears Shealey's counsel intended to refer to Ind. Trial Rule 41, which governs dismissal of actions.

testimony of Jessica Woodall, a forensic child interviewer. Woodall testified that she conducted a forensic interview of M.G. on May 28, 2015 at the Child Advocacy Center, that M.G. mentioned that Bill and Brittany were at the picnic table, someone she called the babysitter, and A., her friend. She testified that M.G. told her that a person she knew as Thomas improperly touched her and that Bill made him stop. She testified that M.G. did not tell her that her brothers were at the table with her. On cross-examination, Woodall testified that M.G. referred to her vagina as her "privacy" and told her that he put his finger inside her "privacy." *Id.* at 231.

[10] Shealey testified that he was forty-eight years old and that he would never put his hands on a boy or a girl. On cross-examination, Shealey indicated that he told the detective that he "didn't really have that much to drink that day" and that there "actually weren't any kids in the park that day at all because it was raining." *Id.* at 241. He also testified that he went inside his apartment, went to the bathroom, and washed his hands before the police arrived. On redirect, Shealey testified that he never said there were not any kids in the park, that he even said what the children were doing, and that the police allowed him to go into his house and did not tell him what he could not do when he went inside.

The court stated that it was going to deliberate and make a decision at a later date. The court held a hearing and found Shealey guilty of attempted child molesting as a level 1 felony.[4]

On October 24 and November 29, 2017, the court conducted the habitual phase of the trial and found Shealey to be an habitual offender. It sentenced him to twenty-four years for attempted child molesting as a level 1 felony enhanced by six years for being an habitual offender.

## *Discussion*

The issue is whether the evidence is sufficient to sustain Shealey's conviction for attempted child molesting as a level 1 felony. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of

---

[4] A chronological case summary ("CCS") entry dated August 22, 2017, indicates a hearing was held and states: "Ruling on Bench Trial." Appellant's Appendix Volume II at 16. A CCS entry dated September 26, 2017, also indicates a hearing was held and states "Ruling on Bench Trial." *Id.* The record does not contain a copy of the transcripts of these hearings.

innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[14] Shealey argues that the evidence is insufficient because, although A.G. and Henley testified they observed his hand pulling away from M.G.'s skirt, their testimony cannot prove that his conduct constituted a substantial step toward committing child molesting. He asserts that neither A.G. nor Henley described where his hand was on M.G.'s body. He also contends that M.G.'s testimony is simply too contradictory and incredible. Specifically, he points to M.G.'s testimony that she did not know what the man who touched her looked like and did not know his name but then testified that Shealey was the man who touched her. He also argues that M.G. testified that the man's fingers touched the inside of her private part only after prompting by the State, that the State asked her four times whether the man's hand moved off her leg and she answered negatively four times. He asserts that M.G. was not credible because she contradicted herself, could not remember the name of the friend seated at the table with her, and her testimony regarding who was at the table and when they arrived differed from that of other witnesses.

[15] The State argues that the evidence is sufficient to sustain Shealey's conviction, and that, while not citing the doctrine, Shealey's claim on appeal is essentially that M.G.'s testimony at trial was incredibly dubious. It argues that the incredible dubiosity rule does not apply because M.G.'s testimony was not wholly uncorroborated.

[16]   Ind. Code § 35-42-4-3(a) provided at the time of the offense that "[a] person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits child molesting" and that "the offense is a Level 1 felony if: (1) it is committed by a person at least twenty-one (21) years of age . . . ."[5] Ind. Code § 35-31.5-2-221.5 defines "[o]ther sexual conduct" as "an act involving . . . (2) the penetration of the sex organ or anus of a person by an object." The culpability requirement of the child molesting statute is knowingly or intentionally. *See Louallen v. State*, 778 N.E.2d 794, 798 (Ind. 2002). A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so, and a person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. Ind. Code § 35-41-2-2. The uncorroborated testimony of the victim of a sexual attack, even if the victim is a minor, is sufficient to sustain a conviction for child molesting. *Feyka v. State*, 972 N.E.2d 387, 393 (Ind. Ct. App. 2012) (citing *Morrison v. State*, 462 N.E.2d 78, 79 (Ind. 1984)), *trans. denied*.

[17]   A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. Ind. Code § 35-41-5-1. A "substantial step" for purposes of the crime of attempt, is any overt act beyond

---

[5] Subsequently amended by Pub. L. No. 187-2015, § 48 (eff. July 1, 2015).

mere preparation and in furtherance of intent to commit an offense. *Hughes v. State*, 600 N.E.2d 130, 131 (Ind. Ct. App. 1992). Whether a defendant has taken a substantial step toward the commission of the crime is a question of fact to be decided by the trier of fact based on the particular circumstances of the case. *Id.* When determining whether the defendant has taken a substantial step toward a crime, the focus is on what has been completed, not on what remains to be done. *Id.* at 132.

[18] "Mens rea can be established by circumstantial evidence and inferred from the defendant's conduct and the natural and usual sequence to which such conduct reasonably points." *Boling v. State*, 982 N.E.2d 1055, 1057 (Ind. Ct. App. 2013) (citing *C.L.Y. v. State*, 816 N.E.2d 894, 905 (Ind. Ct. App. 2004) ("The intent element of child molesting may be established by circumstantial evidence and inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points."), *trans. denied* ).

[19] To the extent Shealey asserts that the incredible dubiosity rule requires reversal of his conviction, we note that the rule applies only in very narrow circumstances. *See Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be

applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Id.*

Shealey fails to show that M.G.'s testimony was inherently contradictory or so inherently improbable that no reasonable person could believe it. To the extent her testimony conflicted with others, this is an issue of witness credibility, and we do not assess witness credibility or reweigh the evidence. *Drane*, 867 N.E.2d at 146.

[20] Based upon our review of the record, including the testimony of M.G., A.G., M.G.'s mother, and Henley, we conclude that the State presented evidence of a probative nature from which a trier of fact could find beyond a reasonable doubt that Shealey committed the crime of attempted child molesting as a level 1 felony. *See Boling*, 982 N.E.2d at 1057-1058 (noting that the victim testified that the defendant "touched her 'front private' first over her underwear and then under her underwear, directly on her skin" and holding that "[t]he natural and usual sequence to which such conduct reasonably points is that [the defendant] had taken a substantial step toward inserting his finger or fingers into [the victim's] vagina," a reasonable jury could find that the defendant had attempted to commit deviate sexual conduct, and the evidence was sufficient to support the defendant's conviction of attempted child molesting as a class A felony).

## *Conclusion*

For the foregoing reasons, we affirm Shealey's conviction.

Affirmed.

Bailey, J., and Crone, J., concur.