# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 26 2017, 6:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel J. Vanderpool
Vanderpool Law Firm
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher L. Kimble,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

September 26, 2017

Court of Appeals Case No.
No. 85A02-1702-CR-417

Appeal from the Wabash Circuit Court

The Honorable Robert R. McCallen, III, Judge

Trial Court Cause No.
85C01-9706-CF-29

**Brown, Judge.**

[1] Christopher L. Kimble appeals his conviction for attempted child molesting as a class B felony. Kimble raises three issues which we revise and restate as:

> I. Whether the trial court abused its discretion in admitting the results of a polygraph examination administered to Kimble;
>
> II. Whether the court abused its discretion in granting the State's motion to amend the charging information; and
>
> III. Whether the evidence is sufficient to sustain his conviction.

We affirm.

### Facts and Procedural History

[2] In the summer of 1994, D.C., who was born in October of 1989, lived in Wabash, Indiana, with her mother, her brother, and Kimble, who was her older sister's boyfriend. D.C.'s mother would leave home for four of five hours to deliver a paper route four or five days per week. D.C. was "half asleep in [her] room" when Kimble entered her room after her mother had left, pulled down his pants, and took off D.C.'s underwear. Transcript at 33. Kimble touched D.C. with his hands and his penis, touched her "around [her] vagina area," and "went around it, and then tried to go inside." *Id.* at 33-34. D.C. did not tell anyone what had happened at the time. She later told her father's wife about the incident, D.C.'s father and his wife took D.C. to the hospital, and law enforcement later interviewed D.C.

[3] On May 29, 1997, Kimble signed an advice of rights and was interviewed by police. He also signed an Agreement of Stipulation of Polygraph Examination providing that the results of the examination may be used in any cause of action which should arise against him and that the written examination report would be introduced into evidence at any trial or hearing.

[4] On May 30, 1997, Kimble signed a Consent to Submit to Polygraph Examination, and Joseph Clingenpeel, II, administered examination. Clingenpeel prepared a polygraph examination report dated May 30, 1997, setting forth the procedures used and his conclusions. The report indicated that Kimble was asked "Did your penis touch [D.C.'s] vagina?"; "Did your penis touch [D.C.'s] vagina while living in Wabash?"; and "Did your finger touch [D.C.'s] vagina?"; and Kimble answered "No" to each of these questions. State's Exhibit 5. The report stated "the results were found to be: Deception indicated," and "[i]t is the opinion of this examiner that the subject was not totally truthful in his responses to the questions asked." *Id.*

[5] In June 1997, the State charged Kimble with child molesting and attempted child molesting as class A felonies. On December 19, 1997, the State filed an amended charging information alleging: Count I, child molesting as a class C felony; and Count II, attempted child molesting as a class B felony.[1] According

---

[1] Specifically, Count II of the information filed on December 19, 1997, alleged:

> [I]n May or June of 1996, at the County of Wabash, and State of Indiana, one CHRISTOPHER LEE KIMBLE did attempt to commit the crime of child molesting by knowingly or intentionally pulling [D.C.'s] pants down, a child under 14 years of age,

to the chronological case summary ("CCS"), at some point in 2016 Kimble was moved from South Carolina where he had been incarcerated to Wabash County, Indiana.[2] In December 2016, a jury trial was held at which D.C. and Clingenpeel testified and the trial court admitted the May 30, 1997 polygraph examination report. After it rested its case-in-chief, the State moved to amend Count II of the information to replace the word "pants" with the word "underwear," to delete the language "and moving it . . . in an up and down movement," and to insert language that Kimble placed his penis near her vagina, and the court granted the motion and stated that the amended language would include the phrase "[a]nd touched his penis around her vaginal area." Transcript at 79, 84, 86. The jury found Kimble guilty on Counts I and II, the trial court entered judgment on both counts, and the court later vacated the conviction on Count I.

---

and placing his penis between her legs and moving it in an up and down movement, which conduct constituted a substantial step toward the commission of the crime of child molesting, a Class "B" Felony, which is performing sexual intercourse with a child under 14 years of age . . . .

Appellant's Appendix Volume II at 22.

[2] A June 2016 entry in the CCS indicates that Kimble "is presently incarcerated in South Carolina," and an October 2016 entry indicates the court was advised Kimble "is now being held in Wabash County." Appellant's Appendix Volume II at 4-5. The record also contains a Notice to Court filed with the trial court in March 2016 by the prosecutor stating that in January 1998 the prosecuting attorney filed a fugitive warrant with the Attorney General of Indiana, that the Attorney General filed a notice to the Governor of South Carolina stating Kimble was in custody in South Carolina, that there was a warrant for him, notifying the South Carolina that after all the proceedings there had concluded they should forward the papers and information to the Extradition Office, Office of the Indiana Secretary of State, and that the received information that Kimble was serving a lengthy jail term and was believed to be sentenced to fifty years at the South Carolina Department of Corrections.

*Discussion*

I.

The first issue is whether the trial court abused its discretion in admitting the results of Kimble's polygraph examination. We generally review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We will not reverse an error in the admission of evidence if the error was harmless. *Turner v. State*, 953 N.E.2d 1039, 1058 (Ind. 2011). Errors in the admission of evidence are to be disregarded unless they affect the defendant's substantial rights. *Id.* at 1059. In viewing the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable effect on the fact finder. *Id.* The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction. *Id.*

As a general matter, Indiana courts look with disfavor on the admission of polygraph examinations in criminal proceedings. *State v. Wroe*, 16 N.E.3d 462, 466 (Ind. Ct. App. 2014), *trans. denied*. Nevertheless, the Indiana Supreme Court has held that polygraphs are admissible when four prerequisites are satisfied:

> (1) the prosecutor, defendant, and defense counsel must all sign a written stipulation providing for the defendant's submission to

the examination and for the subsequent admission at trial of the results;

(2) the admissibility of the test results must be within the trial court's discretion as it relates to the examiner's qualifications and the test conditions;

(3) the opposing party must have the right to cross-examine the polygraph examiner if his graphs and opinion are offered in evidence; and

(4) the jury must be instructed that, at most, the examiner's testimony tends only to show whether the defendant was being truthful at the time of the examination, and that it is for the jury to determine the weight and effect to be given such testimony.

*Id.* (citing *Sanchez v. State*, 675 N.E.2d 306, 308 (Ind. 1996)). In addition, the admission of polygraph evidence is subject to harmless error analysis. *Majors v. State*, 773 N.E.2d 231, 239 (Ind. 2002). "The probable impact of the polygraph reference upon the verdict is of prime importance." *Id.*

[8] Kimble asserts that the trial court abused its discretion in allowing the polygraph results to be admitted at trial under prerequisite (2) above. He argues the polygraph examiner had no specific recollection of the exam and did not have the underlying charts from the polygraph machine or his notes of Kimble's conduct or demeanor and that there was no way the trial court could have considered the test conditions. He states the test was twenty years old and the passage of time would certainly have made the testimony about the test stale, and that the absence of the underlying data and charts prevented him from making comparisons and showing whether the "lie" determination was a close

one using the data graphs and other details that the defense could have used in cross-examination.

[9] The State maintains that the court did not abuse its discretion in admitting Kimble's stipulated polygraph results, and that sufficient evidence was presented concerning Clingenpeel's qualifications and the test results through his testimony and the report itself to satisfy the second prerequisite for admission. It also argues that any error in admitting the test results was harmless because the probable impact of the polygraph results was minimal and D.C. consistently testified that Kimble touched her vagina with his hands and penis when she was four or five years old.

[10] The record reveals that Kimble signed the Agreement of Stipulation of Polygraph Examination on May 29, 1997, which provided that he voluntarily agreed to take a polygraph examination, that he was advised that the agreement constituted a waiver of his right to preclude the introduction of the test results into evidence, and that he agreed the results of the examination may be used in any cause of action which should arise against him. The agreement further provided that "[t]he results and/or opinions" of the examination would be released in writing by the examiner, that "[t]his written report will be introduced into evidence, without objection by either side, at the time of the examiner's testimony at any trial or hearing," and that the examiner is acknowledged "to be an expert in all phases of both administering polygraph examinations and in the analysis of polygraph chart recordings." State's Exhibit 2 at 2-3.

[11] The record further reveals that the May 30, 1997 polygraph examination report prepared by Clingenpeel set forth the procedure used to administer the examination to Kimble and the conditions under which the examination was administered. In discussing the examination procedure, the report stated that the subject was examined in a private polygraph suite with only the examiner and the subject present, that "[a]fter an initial pre-test with the subject, a blood pressure bladder and cuff was wrapped around the upper part of the subject's right arm, with the bladder centered over the subject's brachial artery," and that "[t]he bladder was inflated to a point approximating the subject's arithmetic mean blood pressure, or midway between the subject's systolic and diastolic blood pressures, for the purpose of recording a continuous indication of the subject's pulse rate, blood volume, and variations therein." State's Exhibit 5. The report provided that "[t]wo protruding electrodes were fitted on the subject's index and third fingers on the left hand for the purpose of recording a continuous indication of the subject's sweat gland activity (galvanic skin response) and variations therein," that "[t]wo corrugated rubber tubes were fastened around the subject's upper body, one around the chest area and one around the stomach area, for the purpose of recording a continuous indication of the subject's respiratory pattern and variations therein," that "[t]he seated subject was instructed to sit still, keep both feet flat on the floor, avoid unnecessary movement during the running of the test, and to answer only with a single word – 'Yes' or 'No,'" and that "[a] Lafayette Ambassador Polygraph, serial number 209743, to which the above accessories were attached, was then

activated in accordance with standard procedure, thus initiating the continuous and simultaneous recordings described above." *Id.*

[12] The report further provided that "[t]he polygraph technique used for this examination was the Zone Comparison Test," that "[t]hree series of questions were to be administered with each series containing exactly the same questions previously reviewed and discussed with the subject in the pretest," that "[t]he third test may or may not be asked in the same order, but used the same questions," and that "[t]his enables the examiner to compare the relevant questions with the control questions (technical questions necessary to conduct a proper test with this technique)." *Id.* The report set forth the results of the examination as follows:

> RESULTS:
>
> During the pretest portion of the examination, the subject gave the following information:
>
> Mr. Kimble stated that he did not touch the six year old in a sexual manner. Mr. Kimble further stated that he did not feel that the molest even occurred.
>
> The subject was given the series, consisting of the three tests mentioned above. The results were that he did contain specific reactions to the questions pertaining to the specific issue at hand, the object of the examination. The following were the relevant questions asked, and his response(s):
>
> Q. Did your penis touch [D.C.'s] vagina?
>
> A. No.
>
> Q. Did your penis touch [D.C.'s] vagina while living in Wabash?

A. No.

Q. Did your finger touch [D.C.'s] vagina?

A. No.

*Id.* The report set forth conclusions as follows: "After careful analysis of the subject's responses, the results were found to be: Deception indicated. Hence; It is the opinion of this examiner that the subject was not totally truthful in his responses to the questions asked." *Id.*

[13] Clingenpeel administered the polygraph examination to Kimble and testified that he went to polygraph training for two months in Georgia in 1995, that he was a deputy sheriff and conducted polygraph examinations for the Kosciusko Sheriff's Office from 1995 to 1997, and that in 1997 he was offered a job with the United States Secret Service. When asked to explain how a polygraph examination is set up and conducted, he testified that the examination is based on the autonomic nervous system, it measures sweat gland activity, respiration, and heartbeat, and that when a body is introduced to a threat the heart rate increases, the hands become sweaty, and breathing increases. When asked about control questions, Clingenpeel responded that he had control questions, which are basically background questions, he had relevant questions that are specific to the allegation, he mixes those questions in, he goes over the questions prior to the examination with the examinee and tells the examinee exactly what questions he will ask and never asks any surprise questions, and that he asks the same questions three different times. He stated that examinees are nervous and he finds their baseline by giving them a pretest and adjusts the

polygraph instrument for their baseline, he also makes adjustments between questions, he does not ask rapid fire questions but lets the instrument settle, and that he makes his readings from the baseline. He testified that he prepared the May 30, 1997 polygraph examination report and that he prepared a report after every polygraph examination he administered.

[14] The prosecutor moved to admit the polygraph examination report, and Kimble's defense counsel indicated he had preliminary questions for purposes of objection. Defense counsel asked Clingenpeel if he had any independent recollection of his examination of Kimble, and Clingenpeel indicated that he did not but that he recognized Kimble's name. Clingenpeel indicated that he did not know where the paper printouts generated by the polygraph instrument were located and that he had not reviewed those in nearly twenty years, and that the report was prepared by him as a polygraph examiner in the normal course of business. The court found that Kimble consented to the admission of the polygraph examination report and admitted it.

[15] The prosecutor asked Clingenpeel what he meant when he stated "deception indicated" in the conclusion in his report, and he responded: "That he lied to me regarding those relevant – three relevant questions." Transcript at 67. On cross-examination, when asked if the examiner has discretion as far as making a call regarding deception, Clingenpeel responded affirmatively. He stated that "[w]hen they're close calls, it's inconclusive." *Id.* at 73. The trial court instructed the jury and stated:

Ladies and gentlemen, I do want to instruct you that under the . . . law, polygraph tests are not admissible absent stipulation. So while I have admitted the results of the stipulation, you are cautioned that [the polygraph examination report] tends only to show whether [Kimble] was being truthful at the time of the examination and it is within your province as the jury what weight and effect you will give to [the report] and Mr. Clingenpeel's testimony. Do you understand that? Okay.

*Id.* at 74.

[16] The record reveals that the State presented evidence and elicited testimony from Clingenpeel establishing his training and experience and the conditions of the examination. Based upon the record, we conclude there was sufficient evidence to determine the examiner's qualifications and test conditions and the trial court did not abuse its discretion in admitting the polygraph examination report into evidence. *See Davidson v. State*, 558 N.E.2d 1077, 1085-1086 (Ind. 1990) (holding the polygraph examiner testified as to his training and experience and the conditions under which the appellant's examination was conducted and the trial court thus had sufficient testimonial foundation before it to rule the polygraph results admissible).

[17] Further, even if the trial court erred in admitting the polygraph examination report, we conclude any such error is harmless. D.C. testified as set forth below that Kimble touched her with his hands and penis, he touched her "around [her] vagina area," and he "went around it, and then tried to go inside." Transcript at 33-34. During redirect examination of D.C. by the State, the prosecutor noted that D.C. had stated in her deposition "I knew he touched

me" and he touched her "vagina area," that when asked how certain she was that Kimble touched her, she had answered "I'm really certain that's where he touched me at," and that D.C. agreed that is what she had stated. *Id.* at 41. We also note that the trial court gave the jury a cautionary instruction regarding the polygraph examination report, and conclude, in viewing the evidence as a whole including D.C.'s testimony, that any error in the admission of the polygraph examination report was harmless. *See Majors*, 773 N.E.2d at 239 (holding that, viewing the evidence as a whole, the polygraph evidence likely had little effect on the jury and any error in its admission was harmless).

## II.

[18] The next issue is whether the trial court abused its discretion in granting the State's motion to amend the charging information following its presentation of its case-in-chief. Kimble argues that his defense was centered around the specific allegations of the original Count II, that when preparing for the case defense counsel prepared to refute the allegations that Kimble "moved his penis up and down" while his penis was between D.C.'s legs, and that, "[b]y allowing the amendment, the State was allowed to remove the primary allegation of the attempt charge that would have been most indicative of [Kimble's] intent to attempt intercourse." Appellant's Brief at 16. The State argues that the amendment was not substantive because the material element, namely, that Kimble took a substantial step towards sexual intercourse, remained the same, that the phrase "moving in an up and down movement" was surplusage not required for establishing the attempted child molesting charge, and that without

the deleted language it was still required to prove that Kimble took a substantial step towards sexual intercourse with D.C. The State also argues that, assuming Kimble's cross-examination of D.C. revolved solely around the deleted language in the charging information, Kimble had the opportunity to recall D.C. for further questioning and did not do so.

[19] A charging information may be amended at various stages of a prosecution, depending on whether the amendment is as to form or substance, which is a question of law. *Erkins v. State*, 13 N.E.3d 400, 405 (Ind. 2014), *reh'g denied*. Amendments to a charging information are governed by Ind. Code § 35-34-1-5. *Id.* Subsection (b) of the statute provides in part that the indictment or information may be amended in matters of substance before the commencement of trial if the amendment does not prejudice the substantial rights of the defendant. *Id.* Subsection (c) provides that, "[u]pon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." *Id.* (quoting Ind. Code § 35-34-1-5(c)).

[20] A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. *Id.* Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *Id.* at 405-406. An amendment is one of form and not substance if a defense under

the original information would be equally available after the amendment and the accused's evidence would apply equally to the information in either form, and an amendment is of substance only if it is essential to making a valid charge of the crime. *Id.* at 406 (citations omitted).

[21] Here, the State's requested amendments to Count II did not delete an allegation essential to making a valid charge of the crime and did not prejudice Kimble's substantial rights. Ind. Code § 35-42-4-3(a) provided at the time of the offense that "[a] person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony." A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. Ind. Code § 35-41-5-1. Count II of the information filed on December 19, 1997, alleged:

> [I]n May or June of 1996, at the County of Wabash, and State of Indiana, one CHRISTOPHER LEE KIMBLE did attempt to commit the crime of child molesting by knowingly or intentionally pulling [D.C.'s] pants down, a child under 14 years of age, and placing his penis between her legs and moving it in an up and down movement, which conduct constituted a substantial step toward the commission of the crime of child molesting, a Class "B" Felony, which is performing sexual intercourse with a child under 14 years of age.

Appellant's Appendix Volume II at 22.

[22] At trial, D.C. testified that Kimble took off her underwear from underneath her nightgown, touched her with his hands and penis, and touched her vagina area. On re-cross examination, Kimble's defense counsel stated that Kimble was "charged in Count II with an action that included an allegation that he placed his penis between your legs and moved it up and down in an up and down movement" and asked "[d]o you remember anything like that occurring," and D.C. answered "I do not." Transcript at 43. The State, after it rested its case-in-chief, moved to amend Count II of the information to replace the word "pants" with the word "underwear," to delete the language "and moving it . . . in an up and down movement," and to insert language that Kimble placed his penis near her vagina. *Id.* at 79, 84. Kimble's defense counsel objected and argued that his cross-examination of D.C. was geared specifically toward the language in Count II regarding "the penis moving up and down." *Id.* at 84. The court stated "whether he placed it – rubbed it up and down her leg or placed it around her vagina, I don't think that substantively changes do they feel that either of those actions constitute a substantial step." *Id.* at 85. The court granted the State's request to amend Count II and stated that the charge would include the phrase "[a]nd touched his penis around her vaginal area" and that the final instructions would reflect the language of the amended charge. *Id.* at 86. The court instructed the jury:

> The crime of Attempted Child Molesting is a Class B Felony. Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt. (1) The Defendant, Christopher Kimble, (2) when [D.C.] was a child under fourteen years of age, (3) knowingly or intentionally, (4)

> did pull [D.C.'s] underwear down and touched his penis around her vaginal area, (5) which conduct constituted a substantial step toward the commission of the crime of child molesting.

*Id.* at 104-105.

[23] Whether Kimble moved his penis in an up and down movement after he placed it between D.C.'s legs was not essential to proving the charge of attempted child molesting as a class B felony or to prove that Kimble took a substantial step toward the commission of the crime, and the amendment did not affect Kimble's opportunity to prepare for and defend against the charge. The amendments to Count II did not prejudice Kimble's substantial rights and were not improper. *See Erkins*, 13 N.E.3d at 406 (concluding the particular identity of the co-conspirator performing the overt act was not essential to making a valid conspiracy charge and the State's amendment did not affect the defendant's ability to prepare a defense); *Forney v. State*, 742 N.E.2d 934, 939 (Ind. 2001) (holding the removal of an alleged overt act from the charging information did not prejudice the defendant's substantial rights).

## III.

[24] The next issue is whether the evidence is sufficient to sustain Kimble's conviction for attempted child molesting as a class B felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences

therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

Kimble argues that D.C.'s testimony was contradictory, that judging solely by the acts he completed his intent is not clear, and that D.C.'s statement that he "tried to go inside" was made from the viewpoint of an adult who twenty years later was asked to recall what happened when she was four years old. Appellant's Brief at 13. The State responds that D.C. testified that Kimble "tried to go inside" although she did not recall him penetrating her, Kimble's completed acts were strongly corroborative of his criminal intent, D.C.'s testimony was not inherently contradictory or improbable, and the jury was fully aware of D.C.'s incomplete memory and nonetheless found her testimony convincing. Appellee's Brief at 13.

Ind. Code § 35-42-4-3(a) provided at the time of the offense that "[a] person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony." The culpability requirement of the child molesting statute is knowingly or intentionally. *See Louallen v. State*, 778 N.E.2d 794, 798 (Ind. 2002). A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so, and a person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2. "Sexual intercourse" means "an act that includes any penetration of the female sex organ by the male

sex organ." Ind. Code § 35-31.5-2-302. The uncorroborated testimony of the victim of a sexual attack, even if the victim is a minor, is sufficient to sustain a conviction for child molesting. *Feyka v. State*, 972 N.E.2d 387, 393 (Ind. Ct. App. 2012) (citing *Morrison v. State*, 462 N.E.2d 78, 79 (Ind. 1984)), *rev. denied*.

[27]  A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. Ind. Code § 35-41-5-1. A "substantial step" for purposes of the crime of attempt, is any overt act beyond mere preparation and in furtherance of intent to commit an offense. *Hughes v. State*, 600 N.E.2d 130, 131 (Ind. Ct. App. 1992). Whether a defendant has taken a substantial step toward the commission of the crime is a question of fact to be decided by the trier of fact based on the particular circumstances of the case. *Id.* When determining whether the defendant has taken a substantial step toward a crime, the focus is on what has been completed, not on what remains to be done. *Id.* at 132.

[28]  "Mens rea can be established by circumstantial evidence and inferred from the defendant's conduct and the natural and usual sequence to which such conduct reasonably points." *Boling v. State*, 982 N.E.2d 1055, 1057 (Ind. Ct. App. 2013) (citing *C.L.Y. v. State*, 816 N.E.2d 894, 905 (Ind. Ct. App. 2004) ("The intent element of child molesting may be established by circumstantial evidence and inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points."), *trans. denied* ).

[29] The record reveals that D.C. testified that Kimble entered her bedroom, took off his pants, removed her underwear from underneath her nightgown, touched her with his hands and penis, and touched around her vagina area. D.C. testified that Kimble "went around it, and then tried to go inside." Transcript at 34. When asked "did he have penetration at all," D.C. replied "[n]ot that I remember." *Id.* On cross-examination, Kimble's defense attorney referenced D.C.'s previous deposition and stated "you told me that Mr. Kimble came in, pulled your underwear down, and then you blacked out," and D.C. replied affirmatively. *Id.* at 40. On redirect examination, the prosecutor stated "[n]ow, of course, we didn't go down . . . through the rest of that deposition" and noted that D.C. was asked "[d]o you recall touching itself or did you black out" and that she answered "I knew he touched me, uh, it's just I think my mind kind of forgot how much." *Id.* at 41. The prosecutor noted that D.C. was asked which private area Kimble touched and that D.C. had replied "[m]y vagina area," and D.C. indicated that was correct. *Id.* The prosecutor also noted D.C. was asked "how certain are you that Mr. Kimble touched you," that D.C. replied "I'm really certain that's where he touched me at because I have," that defense counsel then interrupted her and noted her reference to blacking out, and that D.C. then stated "[t]hat's from like, I don't mean black out, that means it's where my mind left it, if that makes sense." *Id.* D.C. indicated that is what she stated in the deposition.

[30] To the extent Kimble argues D.C.'s testimony was not believable or inherently contradictory, we cannot say that D.C.'s testimony that Kimble removed her

underwear, touched her with his hands and penis, touched around her vagina area, and "then tried to go inside," Transcript at 34, was so inherently improbable or equivocal that no reasonable person could believe it. Kimble does not show how the testimony against him was somehow internally inconsistent or incredibly dubious. *See Surber v. State*, 884 N.E.2d 856, 869 (Ind. Ct. App. 2008) (holding that the testimony of a six-year-old victim was not incredibly dubious despite some inconsistencies and that such inconsistencies were appropriate to the circumstances presented, the age of the witness, and the passage of time between the incident and the time of her statements and testimony), *trans. denied*.

[31] A reasonable trier of fact could infer from Kimble's conduct and the natural and usual sequence to which his conduct reasonably points that he knowingly and intentionally took a substantial step toward the penetration of D.C.'s female sex organ by his male sex organ. Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable jury as the trier of fact could find beyond a reasonable doubt that Kimble committed the crime of attempted child molesting as a class B felony. *See Boling*, 982 N.E.2d at 1057-1058 (noting that the victim testified that the defendant "touched her 'front private' first over her underwear and then under her underwear, directly on her skin" and holding that "[t]he natural and usual sequence to which such conduct reasonably points is that [the defendant] had taken a substantial step toward inserting his finger or fingers into [the victim's] vagina," a reasonable jury could find that the defendant had attempted to commit deviate sexual

conduct, and the evidence was sufficient to support the defendant's conviction of attempted child molesting as a class A felony).

## *Conclusion*

[32] For the foregoing reasons, we affirm Kimble's conviction for attempted child molesting as a class B felony.

[33] Affirmed.

May, J., and Pyle, J., concur.